O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE A. DIAZ,                    )       NO. CV 06-7124-CT
                                )
            Plaintiff,          )       OPINION AND ORDER
                                )
            v.                  )
                                )
MICHAEL J. ASTRUE[1], Commissioner )
Commissioner of Social Security, )
                                )
                                )
            Defendant.          )
                                )
_____)

        For the reasons set forth below, it is ordered that
plaintiff's motion for summary judgment be **DENIED** and defendant
Commissioner of Social Security ("the Commissioner")'s motion for
summary judgment be **GRANTED** because the Commissioner's decision is
supported by substantial evidence and is free from material legal
error.

                        SUMMARY OF PROCEEDINGS

        On November 9, 2006, plaintiff, Jose A. Diaz ("plaintiff"),

---

        [1]    On February 1, 2007, Michael J. Astrue became the
Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of
the Federal Rules of Civil Procedure, Michael J. Astrue should be
substituted, therefore, for Commissioner as the defendant in this
suit.

filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act").   The  parties filed a consent to proceed before the magistrate judge.   On March 19, 2007, plaintiff filed a motion for summary judgment.   On May 1, 2007, the Commissioner filed a cross-motion for summary judgment.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

In 2002 plaintiff filed applications for disability insurance benefits and Supplemental Security Income ("SSI"), alleging disability since December 7, 2001 due to diabetes, strokes, depression, high blood pressure and high cholesterol.   (TR 51-53, 62, 394-96).[2]   The applications were denied.   (TR 44-47).

On November 29, 2002, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").   (TR 48).   On July 6, 2004, plaintiff, represented by counsel and accompanied by an interpreter, appeared and testified before an ALJ.   (TR 458-75). On October 19, 2005, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because he was capable of performing medium work with only occasional climbing, which would not preclude him from performing his past relevant work as a hospital cleaner.   (TR 13-24).   On November 22, 2005, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.   (TR 12).   On September 13, 2006, the request

---

[2]     "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

1    was denied.  (TR 6-8).  Accordingly, the ALJ's decision stands as
2    the final decision of the Commissioner.  Plaintiff subsequently
3    sought judicial review in this court.

4                    2.    Summary Of The Evidence
5         The ALJ's decision is attached as an exhibit to this opinion
6    and order and materially summarizes the evidence in the case.

7                         PLAINTIFF'S CONTENTIONS
8         Plaintiff contends as follows:
9    1.   The ALJ failed to properly evaluate the severity of
10        plaintiff's peripheral neuropathy;
11   2.   The ALJ failed to properly evaluate the severity of
12        plaintiff's mental impairment; and,
13   3.   The ALJ erred in assessing the credibility of plaintiff and
14        his daughter in evaluating plaintiff's non-exertional
15        limitations.

16                         STANDARD OF REVIEW
17        Under 42 U.S.C. §405(g), this court reviews the Commissioner's
18   decision to determine if: (1) the Commissioner's findings are
19   supported by substantial evidence; and, (2) the Commissioner used
20   proper legal standards.  Macri v. Chater, 93 F.3d 540, 543 (9th
21   Cir. 1996).  Substantial evidence means "more than a mere
22   scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but
23   less than a preponderance.  Sandgathe v. Chater, 108 F.3d 978, 980
24   (9th Cir. 1997).

25        When the evidence can reasonably support either affirming or
26   reversing the Commissioner's conclusion, however, the Court may not
27   substitute its judgment for that of the Commissioner.  Flaten v.
28
                                    3

1  <u>Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th

2  Cir. 1995).    The court has the authority to affirm, modify, or

3  reverse the Commissioner's decision "with or without remanding the

4  cause for rehearing."   42 U.S.C. §405(g).   Remand is appropriate

5  where additional proceedings would remedy defects in the

6  Commissioner's decision.   <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603

7  (9th Cir. 1989).

8                                <u>DISCUSSION</u>

9       1.    <u>The Sequential Evaluation</u>

10       A person is "disabled" for the purpose of receiving social

11  security benefits if he or she is unable to "engage in any

12  substantial gainful activity by reason of any medically

13  determinable physical or mental impairment which can be expected to

14  result in death or which has lasted or can be expected to last for

15  a continuous period of not less than 12 months."   42 U.S.C.

16  §423(d)(1)(A).

17       The Commissioner has established a five-step sequential

18  evaluation for determining whether a person is disabled.   First, it

19  is determined whether the person is engaged in "substantial gainful

20  activity."   If so, benefits are denied.

21       Second, if the person is not so engaged, it is determined

22  whether the person has a medically severe impairment or combination

23  of impairments.   If the person does not have a severe impairment or

24  combination of impairments, benefits are denied.

25       Third, if the person has a severe impairment, it is determined

26  whether the impairment meets or equals one of a number of "listed

27  impairments." If the impairment meets or equals a "listed

28                                   4

1  impairment," the person is conclusively presumed to be disabled.

2      Fourth, if the impairment does not meet or equal a "listed

3  impairment," it is determined whether the impairment prevents the

4  person from performing past relevant work.  If the person can

5  perform past relevant work, benefits are denied.

6      Fifth, if the person cannot perform past relevant work, the

7  burden shifts to the Commissioner to show that the person is able

8  to perform other kinds of work.  The person is entitled to benefits

9  only if the person is unable to perform other work.  20 C.F.R.

10  §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

11      2.   Issues

12          A.   Peripheral Neuropathy

13      Plaintiff asserts that the ALJ failed to properly evaluate the

14  severity of plaintiff's peripheral neuropathy.  Plaintiff

15  essentially contends that the ALJ selectively ignored evidence and

16  erroneously relied on the opinion of the state agency physician,

17  which, plaintiff asserts, is contrary to the medical evidence.

18      A severe impairment or combination of impairments is one that

19  significantly limits the physical or mental ability to perform

20  basic work activities.  20 C.F.R. §§ 404.1520(c); 416.920(c).

21  Basic work activities relate to the abilities and aptitudes

22  necessary to perform most jobs.  20 C.F.R. §§ 404.1521(b);

23  416.921(b); Bowen v. Yuckert, 482 U.S. at 141-42.  An impairment

24  will be considered non-severe when medical evidence establish only

25  a "slight abnormality or a combination of slight abnormalities

26  which would have no more than a minimal effect on an individual's

27  ability to work even if the individual's age, education, or work

28

1  experience were specifically considered."  Social Security Ruling

2  85-28; Bowen v. Yuckert, 482 U.S. at 154 n.12.

3      Here, the ALJ found that petitioner's hypertension and non-

4  insulin-dependent diabetes are severe, but not disabling,

5  impairments.  However, the ALJ, after a careful review of the

6  record and with numerous specific citations to the medical

7  evidence, did not find that plaintiff had any other severe

8  impairment and specifically found that "the treatment record does

9  not establish that [plaintiff] has had symptoms which would

10  significantly interfere with sustained work activity at a medium

11  level of exertion."  (TR 20).

12      The ALJ's finding is supported by substantial evidence in the

13  record.  For example, the ALJ noted repeated instances in

14  plaintiff's treatment records in which neurological exams yielded

15  essentially normal findings and/or no significant limitations.

16  (See, e.g., TR 367 (no gait ataxia in March 2002); TR 119, 170 (no

17  focal deficits, no ataxia and sensory and motor intact in April

18  2002); TR 354 (normal motor strength in September of 2002); TR 318

19  (no acute focal deficits, normal motor strength in extremities,

20  some decreased sensation, but can "ambulate okay" in October 2002);

21  TR 271, 346, 348 (2003 findings of no focal deficits, and no

22  neuromuscular problems)).  In addition, the psychiatrist who

23  evaluated plaintiff consultatively in September of 2002 noted that

24  plaintiff was "ambulatory, had a normal gait, with no abnormal

25  movements noted."  (TR 173).

26      The ALJ also gave significant weight to the opinion of the

27  state agency physician who reviewed plaintiff's medical records in

28

September of 2002 and essentially adopted the state agency
physician's functional assessment.  (TR 21, 184-91).  Where as
here, the state agency physician's findings are consistent with the
record evidence, they serve as substantial evidence supporting the
ALJ's opinion.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.
2002)("The opinions of non-treating or non-examining physicians may
also serve as substantial evidence when the opinions are consistent
with independent clinical findings or other evidence in the
record.").

The state agency physician considered evidence that plaintiff
had experienced episodes of vertigo, nausea and vomiting, an old
lesion from a possible prior stroke, and findings of some
diminished sensation in both feet, and found that plaintiff had
diabetes mellitus with mild peripheral neuropathy.  (TR 185-86).
As a result, the agency physician limited plaintiff to essentially
medium work with only occasional climbing.  (Id.)  However, the
agency physician did not find that further limitations were
warranted, noting that plaintiff's July 2002 neurological consult
resulted in findings of a normal gait, intact coordination, and
motor strength of 5/5.  (TR 186, 189).  These findings are
supported by the record. (TR 163).

Plaintiff points to several instances in the record where his
physicians noted possible peripheral neuropathy and, at times, some
decreased sensation in his feet.  (TR 240, 296, 288, 386, but see,
TR 303 (intact sensation in feet in January 2003)).  These findings
are not inconsistent with the state agency physician's assessment
or the ALJ's conclusions.  The ALJ recognized that plaintiff had

7

made occasional complaints of numbness and pain in the feet and the
state agency physician found that the records evidenced plaintiff's
mild peripheral neuropathy.  However, as the ALJ correctly noted,
findings of significantly limiting neurological deficits are absent
from the treatment records.  Moreover, in 2003, plaintiff had a
nerve conduction study to address complaints of "pain on ball of
left foot [] when weight bearing (walking)."  (TR 287).  Plaintiff
reported "[n]o other significant complaints of numbness or
weakness."  (Id.)   The nerve conduction study findings were
essentially normal.  (Id.).

        Plaintiff also refers to episodes of dizziness, fainting and
vomiting and a cerebrovascular accident (stroke).  The records do
refer to a possible past stroke, and acute episodes of dizziness,
vomiting and fainting in July 2001, March and April of 2002 and
July of 2003.  (TR 337-341 (July 2001 episode of dizziness and
abnormal behavior associated with hypoglycemia, but on physical
examination noting normal findings including no disturbance of gait
or stance and sensation grossly intact), TR 119 (discussing episode
in March 2002 and finding no focal neurological deficits), 163
(follow up in July 2002 after episode in April 2002, noting that
plaintiff denied focal neurological signs or symptoms and that the
doctor "doubt[ed] that event was a stroke event"), 257-60
(hospitalization in July of 2003 reporting facial weakness,
abnormal behavior, dizziness with a diagnosis of hypoglycemia)).
However, as the ALJ noted, the neurological examinations conducted
after the 2001 and 2002 episodes were essentially normal.  (See,
e.g., TR 119, 163, 170, 341).  On plaintiff's discharge from the

8

2003 hospitalization for hypoglycemia, doctors reported that plaintiff was stabilized and fully ambulatory and was capable of returning to his usual occupation.[3]  (TR 257-60; 291-92).

In addition, contrary to plaintiff's contention that he is in disabling pain as a result of peripheral neuropathy, the records that were before the ALJ at the time of his decision are remarkable for an absence of consistent or constant complaints about pain. Plaintiff reported no pain to his doctors on a number of occasions. (TR 113, 233, 236, 239, 422).  Records submitted to the Appeals Council after the ALJ's decision also show only sporadic complaints of pain by plaintiff and the examinations do not show significant neurological deficits.  (TR 432 (November 2005 notes reflecting complaints of left foot pain, but no deformity of the foot and sensitive to light touch); TR 436 (September 2005 notes that plaintiff "denied any pain"); TR 441 (May 2005 notes that plaintiff denies new complaints, his feet are sensitive to light touch, and foot exam within normal limits); TR 422 (August of 2005 notes "no c/o pain at this time") TR 443 (February 2004 reporting pain); TR

---

[3]The ALJ discounted a notation in August 4, 2003 treating notes from Martin Luther King, Jr. Hospital stating that plaintiff was disabled for six months secondary to "CVA [stroke] and diabetic neuropathy." (TR 240).  As the ALJ found, this assessment is contradicted by the July, 2003 opinion of treating doctors that plaintiff may "return to usual occupation."  (TR 258).  Plaintiff does not directly challenge the ALJ's rejection of this opinion, and where, as here, contemporaneous medical reports are inconclusive, questions of credibility and resolution of conflicts in the evidence are a function solely of the Commissioner.  See Morgan v. Commissioner, 169 F.3d 595, 601 (9th Cir. 1999).  In any event, a disability period of six months would not meet the durational requirement.  See Roberts v. Shalala, 66 F.3d 179,182 (9th Cir. 1995)(disabling impairment must be "expected to last for a continuous period of not less than twelve months.").  .

1  444 (August 2004 reporting no pain).  In addition, as the ALJ

2  observed, petitioner was not prescribed strong narcotic medications

3  for pain. (See TR 107; 428-29).

4      The ALJ's assessment of plaintiff's peripheral neuropathy was

5  free from material legal error and is supported by substantial

6  evidence in the record.

7              B.   Mental Impairment

8      Plaintiff also contends that the ALJ erred in finding that he

9  has no severe mental impairment.

10     Alleged mental impairments are evaluated under the same

11  sequential analysis as physical impairments.  Once the Commissioner

12  determines that a mental impairment exists, the Commissioner must

13  then evaluate the degree of functional loss it causes by rating

14  plaintiff's level of functional limitation in four areas:

15  (1) activities of daily living; (2) social functioning;

16  (3) concentration, persistence, and pace; and (4) deterioration or

17  decompensation in work or work-like settings.  If an individual's

18  limitations are rated as mild in the first three areas and the

19  individual has had no episodes of deterioration or decompensation,

20  the mental impairment will normally be found to be not severe.  20

21  C.F.R. §§ 404.1520a; 416.920a.

22     Here the ALJ correctly found that "the medical evidence fails

23  to show that the [plaintiff] has any significant mental functioning

24  limitations."  (TR 21).  The record contains a few passing

25  references in plaintiff's medical records to ruling out depression

26  (see, e.g., TR 119, 364) and a referral for a dementia work up in

27  February of 2002 after plaintiff had not been taking his medicine.

28

1    (TR 124).  However, the record does not reflect a diagnosis of

2    dementia or any significant outpatient treatment or hospitalization

3    for a mental impairment.

4         In his application, petitioner contended he had depression and

5    memory loss.  (TR 62).  At the hearing, when asked by his counsel

6    to describe his mental problems, plaintiff testified that "I think

7    that I am afraid."  (TR 469).  Plaintiff now contends that his

8    mental impairment is "cognitively based, rather than

9    psychiatrically based."  (Plaintiff's Points and Authorities at

10   10).  As evidence, plaintiff focuses on his past acute episodes of

11   vertigo and fainting and findings of mild cerebral atrophy and

12   ischemic changes.  (Id. at 9-10).  However, as discussed above, the

13   ALJ's finding that plaintiff's condition has not resulted in any

14   significant functional limitations is supported by the record.

15        For example, in addition to plaintiff's treatment notes which

16   do not indicate any significant treatment for a mental impairment,

17   the findings of Dr. Paculdo, the psychiatrist who examined

18   plaintiff consultatively on September 5, 2002, also support the

19   ALJ's determination that plaintiff has no significant mental

20   limitations.[4]   Plaintiff's principle mental complaint to Dr.

21   Paculdo was loss of memory.  (TR 175).  However, Dr. Paculdo found,

22   among other things, that plaintiff's memory was intact, he was

23   alert, cooperative, oriented and functioning in the normal range of

24   intelligence.  (TR 176).  Dr. Paculdo concluded that plaintiff can

25

26        [4]The ALJ's assessment is also consistent with the findings

27   of the state agency psychiatrist, whose assessment supports a
     finding of a non-severe mental impairment.  (TR 192-94; 206).

28
                                    11

1  sustain focused attention, complete everyday routines, follow and

2  understand simple instructions and can adapt to work stress, but in

3  a less stressful work setting.  (TR 177).  Such findings are

4  substantial evidence supporting the ALJ's decision.  <u>See</u> <u>Thomas v.</u>

5  <u>Barnhart</u>, 278 F.3d at 957.

6    Contrary to plaintiff's contention, these findings are not

7  inconsistent with the ALJ's determination that plaintiff is able to

8  perform his past relevant work as a hospital cleaner.  Plaintiff

9  points out that, according to the Dictionary of Occupational Titles

10  ("DOT"), the hospital cleaner job requires a reasoning level of 2.

11  <u>See</u> DOT No. 323.687-010; Appendix C.  This job requirement is not

12  inconsistent with plaintiff's abilities as assessed by Dr. Paculdo.

13  <u>See</u> <u>Meissl v. Barnhart</u>, 403 F.Supp.2d 981, 984 (C.D. Cal.

14  2005)(plaintiff, whose RFC limited her to simple tasks performed at

15  a routine or repetitive pace, was able to perform jobs listed in

16  DOT with a reasoning level score of 2).

17    Nor is Dr. Paculdo's finding that plaintiff can adapt to work

18  stress "but in a less stressful setting" contrary to the ALJ's

19  determination that plaintiff does not have a severe mental

20  impairment.  Dr. Paculdo's ambiguous reference does not indicate

21  that plaintiff is anything more than mildly impacted by mental

22  limitations.  In fact, Dr. Paculdo gave plaintiff a global

23  assessment of functioning ("GAF") score of 70, which indicates only

24  "[s]ome mild symptoms" but that the person is "generally

25  functioning pretty well."  <u>See</u> <u>Diagnostic and Statistical Manual of</u>

26  <u>Mental Disorders</u> at 34 (4th ed. Text Revision 2000 (DSM-IV-TR)).

27  The ALJ's determination that Dr. Paculdo's report, along with other

28

1    record evidence, demonstrated that plaintiff was not more than

2    mildly impaired by any mental limitations, was based on a rational

3    interpretation of the evidence.   See Batson v. Commissioner of

4    Social Security Administration, 359 F.3d 1190, 1193 (9th Cir.

5    2004)("[T]he Commissioner's findings are upheld if supported by

6    inferences reasonably drawn from the record, and if evidence exists

7    to support more than one rational interpretation, [the court] must

8    defer to the Commissioner's decision")(internal citations omitted).

9        The ALJ's assessment of plaintiff's mental limitations is free

10   from material legal error and supported by substantial evidence.

11           C.   Credibility

12       Finally, plaintiff asserts that the ALJ failed to properly

13   evaluate plaintiff's non-exertional limitations because he failed

14   to properly assess the credibility of his testimony and allegations

15   and the allegations in the third party daily activity statement

16   submitted by his daughter.

17       To reject a plaintiff's subjective complaints, the ALJ must

18   provide "'specific, cogent reasons for the disbelief.'"   Greger v.

19   Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(citation omitted).   In

20   the absence of evidence of malingering, the reasons must be "clear

21   and convincing."   Id. If the ALJ determines that plaintiff's

22   testimony concerning the intensity of pain or other limitations is

23   not fully credible, the ALJ must "specifically identify what

24   testimony is credible and what testimony undermines the

25   [plaintiff's] complaints."   Morgan v. Comm'r of Soc. Sec. Admin.,

26   169 F.3d at 599(citation omitted).   "In this regard, questions of

27   credibility and resolutions of conflicts in the testimony are

28

                                      13

1  functions solely of the Secretary." Id. (citations omitted).

2      The ALJ met these requirements here.  While the ALJ

3  acknowledged that plaintiff had impairments that could cause some

4  pain, the ALJ found, that his "pain and symptoms would not impact

5  [his] ability to perform work activities within the parameters of

6  the [ALJ's] functional assessment." (TR 22).  The ALJ gave a

7  number of legally sufficient reasons for discounting the

8  credibility of plaintiff's and his daughter's excess pain and

9  symptom allegations.  For example, the ALJ found that plaintiff's

10 reported daily activities were inconsistent with disabling

11 limitations, citing specific examples in the record.  (TR 22).

12 These findings are supported by the record, (see; e.g., TR 83, 84,

13 174), and are a proper reason for discounting plaintiff's

14 credibility.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

15 1989)(in evaluating credibility of plaintiff's allegations of pain

16 and limitations, the ALJ can properly consider plaintiff's ability

17 to spend a substantial part of the day engaged in pursuits

18 involving the performance of physical functions that are

19 transferable to a work setting).

20      In addition, the ALJ found that plaintiff's reports to his

21 doctors contradict his allegations of disabling pain or symptoms.

22 (TR 22).  As detailed above, plaintiff's neurological exams did not

23 reveal disabling limitations, plaintiff did not consistently report

24 pain to this doctors, and plaintiff was not taking any strong

25 medications for pain.  See Parra v. Astrue, 481 F.3d 742, 750-51

26 (9th Cir. 2007)(in discounting plaintiff's allegations of disabling

27 pain, ALJ properly considered that plaintiff's allegations of

28

14

1  bursitis pain were contrary to treatment records showing joint

2  functioning within normal limits and that plaintiff's ailments were

3  treated with over-the-counter pain medications).

4      The ALJ also noted plaintiff's sometimes poor compliance with

5  prescribed treatment, a finding supported by the record. (TR 122,

6  124, 201, 435). The also is a proper basis for discounting

7  plaintiff's credibility.  <u>See</u> 20 C.F.R. §§ 404.1530; 416.930("If

8  you do not follow the prescribed treatment without a good reason,

9  we will not find you disabled . . ."); <u>Smolen v. Chater</u>, 80 F.3d

10 1273, 1284 (9th Cir. 1996)(in determining credibility of plaintiff's

11 allegations, ALJ can consider inadequately explained failure to

12 follow a treatment plan).

13     The ALJ discounted the credibility of allegations of

14 plaintiff's daughter for the same, legitimate reasons.  <u>See</u> <u>Greger</u>

15 <u>v. Barnhart</u>, 464 F.3d 968. (9th Cir. 2006)(finding ALJ properly

16 discounted law witness's statements that were inconsistent with

17 plaintiff's presentation to his treating physicians at the time).

18     The ALJ's credibility assessment is supported by substantial

19 evidence and free from material legal error.

20                              <u>CONCLUSION</u>

21     Plaintiff clearly has severe impairments.  However, a

22 plaintiff who can still perform work in the national economy, even

23 with a severe impairment, is not disabled as that term is defined

24 by the Act.  <u>See</u> <u>generally</u> <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395

25 (9th Cir. 1991).  Furthermore, if the evidence can reasonably

26 support either affirming or reversing the Commissioner's

27 conclusion, the court may not substitute its judgment for that of

28

1  the Commissioner.  <u>Flaten v. Secretary of Health and Human</u>
2  <u>Services</u>, 44 F.3d at 1457.

3      After careful consideration of the record as a whole, the
4  magistrate judge concludes that the Commissioner's decision is
5  supported by substantial evidence and is free from material legal
6  error.  Accordingly, it is ordered that plaintiff's motion for
7  summary judgment be **DENIED**, the Commissioner's cross-motion for
8  summary judgment be **GRANTED** and that judgment be entered in favor
9  of the Commissioner.

10      This opinion constitutes the court's findings of fact and
11  conclusions of law.

12  DATED: May 8, 2007

13                    CAROLYN TURCHIN
                    _____
14                    CAROLYN TURCHIN
                    UNITED STATES MAGISTRATE JUDGE